UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIAM SPECTOR

v.                                                        CASE NO. 3:03CV 252 (GLG)

TRANS UNION LLC                                           March 8, 2004

## PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT

Without providing the Court with its own records which undermine its position, defendant (TU) has moved for summary judgment. Those records were produced in discovery and are appended to plaintiff's affidavit.

<u>New violation evidencing willfulness.</u> Compounding the violations alleged in this case, and without any reason whatsoever, or any possible permissible purpose, TU's employee, through its counsel who should know better, has put plaintiff's credit file on this public record. 15 U.S.C. § 1681b (disclosure permitted for certain purposes "and no other"). Plaintiff's file is appended to the Declaration of Motlasz, who was not identified as a person who had knowledge of this matter. The contents of plaintiff's credit file were not at issue in this matter; its nondisclosure to plaintiff, or disclosure to persons who had no permissible purposes (including defense counsel) were at issue.

Thus, there is no excuse for putting plaintiff's entire file (as distinguished from a redacted cover page) on this record. Putting plaintiff's private financial information on this public record violates not only the FCRA, but the CM/ECF guidelines which mandate caution when filing documents that contain individual financial information.

<u>1. Admitted violation.</u> TU admits that it did not provide plaintiff a copy of his credit report upon request, as mandated by the Fair Credit Reporting Act. Instead, it sent

him a letter falsely stating that a reinvestigation was in progress. As TU admits (Def. Mem. at 10), punitive damages are called for when a credit bureau willfully misrepresents or conceals information. <u>Parker v. Parker</u>, 124 F. Supp. 2d 1216, 1225-26 (M.D. Ala. 2000) (surveying case law).

      2. <u>Admitted impermissible disclosure.</u> TU admits that it intentionally provided plaintiff's credit file to his cousin, Bruce Luckman, on January 2 or 3, 2003, before this suit was filed, because plaintiff's wife "made the transaction the subject of a law suit." Def. Mem. at 2, 10. Plaintiff's wife never made plaintiff's transaction the subject of any lawsuit. Plaintiff's wife did not make <u>her</u> transaction the subject of a lawsuit until later: Feb. 10, 2003, Civil No. 3: 03-CV-251. The FCRA does not allow TU to provide plaintiff's credit file to anyone who does not have a statutorily permissible purpose, including defense of someone else's unfilled lawsuit. TU records, appended to plaintiff's affidavit, reflect several additional internal file disclosures, presumably given to defense counsel, but at least creating an issue of fact as to whom the plaintiff's files were given and for what, if any, permissible purpose.

      3. <u>Other impermissible disclosures.</u> TU has improperly filed plaintiff's credit Report on the public record. Pages 8-9 of the Report show painfully obvious and repeated impermissible account reviews in 2002 by entities that had no open account, or even closed account (referred to in the industry as a "tradeline") with plaintiff: Associates National Bank, Capital One Bank. Anyone familiar with the FCRA would spot those impermissible accesses immediately. TU has admitted that impermissible disclosures appear on the face of its own Report. Summary judgment for plaintiff and against TU could enter on the alleged impermissible disclosure violations.

4. TU's failure to provide disclosure was willful. As to the failure to provide his consumer disclosure, TU concedes negligence (Def. Mem. at 8). Since TU did not provide plaintiff's credit report to him at any time (See plaintiff's Affidavit), even after notice to counsel, a jury could conclude the nondisclosure was intentional. Per the Motlasz Aff. ¶6, when a targeted consumer requests his disclosure, it is sometimes provided "through Trans Union's counsel." Since plaintiff did not get the Feb. 14 disclosure, it was undoubtedly transmitted to its counsel herein to make the disclosure. He did not make the disclosure. TU's counsel also ignored specific July notice (letter appended to plaintiff's affidavit) that plaintiff had not yet received the report. Neither TU's counsel nor TU provided the disclosures even then.

"Computer freeze" excuse untenable. A jury might well believe that even TU's initial refusal to comply with the FCRA was intentional, in view of the fact that his credit files (a) had been locked intentionally; (b) were branded with an alert about his representation by attorney; (c) and TU did not provide his files even when TU's counsel was informed they had not yet been provided.

Defendant relies entirely on its own unsubstantiated, if not fanciful, version of how and why its system so completely malfunctioned when it failed to respond to Plaintiff's request to send him a copy of his report. The linchpin of its explanation and the sole basis on which it now claims that it did not act "willfully" when it violated the FCRA is a previously unknown phenomenon now denominated as a "computer freeze." A jury could, and should, discredit this unlikely scenario, and conclude that TU refused to provide the credit disclosure intentionally. Plaintiff and his wife requested their credit reports at the same time. Plaintiff's wife got hers, but supposedly an unexplained and uncommon

3

"computer freeze" prevented TU from sending plaintiff's file to him. Motlasz hearsay Aff. Instead, the operator generated a letter falsely stating that a reinvestigation was in progress.

A jury might well not believe the "computer freeze" for several reasons. First, plaintiff's wife successfully got her file at the same time. Second, page 10 of Def. Ex. D[1] expressly says that the operator must forward a consumer's disclosure request to another department if the file is coded "L" for Legal, as plaintiff's files were. Third, the Priority Processing Unit handled the account because plaintiff's files were intentionally "locked." [See appended portion of 2001 Dispute Processing Reference Manual, not produced herein, and not appended to TU's Rule 56 Statement.] "Locked" and "frozen" would seem to reflect the same "uncommon" (as described by Mr. Motlasz) account condition.

5. Harm. TU argues that plaintiff has not shown any harm. However, the harm comes, in part, from not even seeing his credit report to be able to tell whether it is accurate, the primary purpose of the mandatory disclosure requirements. Defendant appends plaintiff's responses to discovery (Def. Ex. C, p. 6) in which plaintiff expressed "distress and anger at TU's blatant refusal to comply with the FCRA," and describes his damages as "out of pocket expense for postage; denial of credit as reflected on TU's credit file; increased cost of credit; embarrassment, anxiety, distress." Such damages are sufficient to support a recovery. Casella v. Equifax Credit Information Serv., 56 F.3d 469, 474 (2d Cir. 1995); Dalton v. Capital Assoc., 257 F.3d 409, 418-19 (4th Cir. 2001); Guimond v. Trans Union Credit Corporation, 45 F.3d 1329, 1333 (9th Cir. 1995); Bryant

---

[1] The 1999 Manual was outdated and superseded by the time of the 2002 incidents at issue. Yet the 1999 Manual is all TU has produced herein, probably because its request for confidentiality failed.

4

v. TRW, Inc., 487 F. Supp. 1234, 1238-39 (D. Mich. 1980), aff'd, 689 F.2d 72 (6th Cir. 1982)

      6. Plaintiff's File was inaccurate on its face. TU's absence-of-harm argument also relies on the purported accuracy of the plaintiff's credit file. In fact, the report improperly appended to the Motlasz Aff. (a report never provided to plaintiff, perhaps to ensure he could not dispute it) was inaccurate. For instance, all the Charge Off or Delinquency tradelines should have shown "No balance" and "Unrated" because they had been discharged in bankruptcy. The plaintiff's credit file itself shows that third parties accessed his report with the inaccurate information thereon. Ex. 2 to Motlasz Aff. at 8-10.

      TU's absence of harm argument claims that plaintiff "failed to show" that he would have disputed any information. Plaintiff has not yet had a chance to show this, having not received the consumer disclosure. However, his counsel did advise TU's counsel, by letter dated July 15, 2003, that the just-received initial disclosures included tradelines which should have been reporting as "bankruptcy with no rating." At this point, the FRCA required TU to investigate (15 U.S.C. § 1681i), but TU intentionally did not do so.

      TU's "absence of harm" argument is contrary to its evidentiary submission. It fails for that reason, and because the facts and the law are inconsistent with its posture.

      7. Intentional violations do not require harm. If the violation is intentional (reckless disregard), plaintiff need not show actual harm. §1681n. There is nothing more intentional, or vicious, than TU's putting plaintiff's credit file on the public record herein, appended to the Motlasz Affidavit. There is nothing more intentional than TU's providing Mr. Luckman with a copy of his cousin's credit report before any suit was filed. Mr.

Luckman had no possible permissible purpose. As shown above, TU's failure to make the consumer disclosure at all, even after notice that it had not been received, was intentional.

TU makes no evidentiary submission on its claim for summary judgment on the basis of its January 2003 disclosure of plaintiff's file to his cousin (defense counsel) for the purpose of a different lawsuit. TU's internal files (appended to plaintiff's Affidavit) show other unexplained "internal" disclosures (11/09/01; 2/27/03; 3/04/03; 8/19/03), none of them sent to this plaintiff. TU does not explain the recipient or purpose of its multiple disclosures of plaintiff's file after this lawsuit. TU is, in fact, cavalier about disclosing confidential consumer files. Not only did TU submit the file for the public record herein, with no permissible purpose, but in Mrs. Spector's case, it gave several of plaintiff's wife's credit files to a court reporter, who likewise had no permissible purpose.

Disclosure for litigation purposes is well-established as impermissible. 15 U.S.C. §1681b(f). (The following examples all pre-date the 1996 amendments, which confirm their holdings): E.g., Comeaux v. Brown & Williamson Tobacco Co., 915 F.2d 1264, 1267, 1273-74 (9th Cir. 1990) (at least negligence, as a matter of law, to obtain consumer report for use in litigation); Auriemma v. Montgomery, 860 F.2d 273, 279, 280-81 (7th Cir. 1988) (extra-judicial investigation by attorneys improper; no privilege); Yohay v. City of Alexandria Employees Credit Union, Inc., 827 F.2d 967, 971 (4th Cir. 1987) (improper for attorney to get spouse's report to use in litigation).

### SUMMARY JUDGMENT SHOULD BE DENIED

TU frequently seeks summary judgment based on purported lack of harm, and purported lack of willfulness. E.g., Soghomonian v. United States & Trans Union, 278 F Supp. 2d 1151 (E.D. Ca. 2003); Crane v. Trans Union, LLC, 282 F. Supp. 2d 311 (E.D.

6

Pa. 2003); Lawrence v. Trans Union LLC, 2003 WL 22992081 (E.D. Pa. Dec. 11, 2003); Evantash v. G.E. Capital Mortgage Services & Trans Union,, 2003 WL 22844198 (E. D. Pa. Nov. 25, 2003);  Sheffer v. Experian Inf. Solutions, Inc. & Trans Union, 2003 WL 21710573. Its lack of success on such quintessentially factual issues has not deterred it from trying again – without evidentiary support – in this case.

"Congress enacted the FCRA in 1970 to promote efficiency in the Nation's banking system and to protect consumer privacy. As relevant here, the Act seeks to accomplish those goals by requiring credit reporting agencies to maintain 'reasonable procedures' designed 'to assure maximum possible accuracy of the information' contained in credit reports and to 'limit the furnishing of [such reports] to' certain statutorily enumerated purposes." TRW Inc. v. Andrews,  534 U.S. 19, 122 S. Ct. 441, 444 (2001) (citations omitted). Defendant ("TU") has violated the privacy and accuracy goals of the FCRA.

Moreover, "compliance with the consumer disclosure, reinvestigation and correction provisions of the statute is fundamental to achievement of Congress' goal of assuring 'maximum possible accuracy' in consumer reports."   In re Equifax, 96 FTC 1045, 1066 (1980), rev'd in part on other grounds, 678 F.2d 1047, 1052 (11th Cir. 1982) (whether procedures followed posed an unreasonable risk of error). TU has violated the disclosure provisions fundamental to the FCRA as well.

TU's Motion should be denied based on the obvious jury issues it raises on its face.

THE PLAINTIFF

BY___/s/ Joanne S. Faulkner___
JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511-2422
(203) 772-0395
j.faulkner@snet.net

This is to certify that the foregoing was mailed on March 6, 2004, postage prepaid, to:

Bruce Luckman
Satzberg, Trichon, Kogan & Wertheimer, P.C.
1818 Market St  30th floor
Philadelphia PA 19103-3699

__/s/ Joanne S. Faulkner___
Joanne S. Faulkner