**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| WILLIAM SPECTOR<br><br>                Plaintiff,<br>    v.<br><br>TRANS UNION LLC<br><br>                Defendant. | C.A. NO. 3:03-CV-00252 GLG<br><br><br><br><br>Dated:  March 15, 2004 |

**TRANS UNION LLC'S REPLY TO PLAINTIFF'S
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Trans Union's opening memorandum and exhibits demonstrate that plaintiff suffered no harm and that Trans Union's delay in responding to a single disclosure request was not, as plaintiff complains, the result of an unlawful policy or malicious act, but a computer error. Most importantly, plaintiff has not presented a scintilla of evidence that this single incident was willful or in conscious disregard for his rights under the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* (the "FCRA"). On the contrary, the Motlasz Declaration and manuals produced are uncontested and confirm that no such policy exists or existed.

Plaintiff's opposition contends, without competent affidavit or evidence, that Trans Union has a policy to withhold reports from litigants. This contention, based almost exclusively upon unfounded assertions and observations of plaintiff or his counsel, fails to demonstrate that Trans Union willfully or intentionally withheld his report, and is simply wrong.

Moreover, Plaintiff's second claim, that Trans Union and its counsel are barred from reviewing a consumer file to defend an FCRA claim, is utterly baseless. He has failed to identify a single case or statute to support this contention. As set forth in Trans Union's opening brief and below, it would be impossible for Trans Union to "follow reasonable procedures to assure maximum possible accuracy" if it could not look at the information contained in its own

database. It would likewise be unable to defend lawsuits if it could not disclose such data to its attorneys.

Plaintiff asserts, without rational or legal connection to his claims, that one of Trans Union's attorneys is plaintiff's cousin. See Spector Affidavit, ¶2. The absence of any legal significance of that relationship was effectively rejected by Judge Thompson, when he denied plaintiff's wife's motion to disqualify Trans Union's law firm on the basis of that relationship. (See Endorsement Order, Exhibit "1"; Rachel Spector v. Trans Union, U.S.D.CT, Case No. 3:02 CV 861)[1] Here, plaintiff's affidavit ought to be disregarded because he fails to articulate a connection between the relationship and his claim. Further, his unfounded allegations and suspicions about Trans Union's procedures concerning why his file was reviewed are irrelevant and erroneous. Indeed, plaintiff's unseemly invocation of dead parents and long ago childhood memories has no place in or relevance to an opposition to summary judgment.

Simply stated, Plaintiff's Opposition does not demonstrate the existence of a "genuine issue as to any material fact" as required by Fed.R.Civ.P. 56(c). A "genuine" issue requires that a summary judgment opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). As more fully discussed herein, Plaintiff's Opposition is largely contentions and commentary of Plaintiff's counsel based upon her unfounded observations and descriptions of Trans Union documents and procedures; there is

---

[1] There, plaintiff filed an affidavit in support of his wife's motion to disqualify. That affidavit contained a virtually identical paragraph concerning his memories and relationship to Luckman. Judge Thompson denied the motion and stated, in pertinent part: "The plaintiff submits that she is appalled that Mr. Luckman could represent a party against whom she has filed suit. However, Mr. Luckman and his firm have represented Trans Union for more than 20 years, and for five years have acted as regional counsel in virtually all of its Fair Credit Reporting Act cases in 20 states along the eastern seaboard. Mr. Luckman could be equally taken aback that the spouse of a relative has chosen to continue with a lawsuit of this type against an established client of his. The nature of the family relationship between the individuals is something for them to determine; it is not something that is properly addressed by this court through the application of rules designed to preserve the integrity of the adversary process."

very little, if any, relevant citation to law on the subjects of disclosures or damages and no admissible relevant evidence. The sole affidavit in connection with such observations is from **Plaintiff** and is based upon his suspicions and allegations respecting why Trans Union and its counsel have accessed Trans Union's own records and reports.

Because Plaintiff fails to present evidence supporting the crucial elements of his FCRA claims – a willful failure to disclose to plaintiff or an improper review by Trans Union's counsel, or actual harm – or to create a genuine issue of material fact, Trans Union is entitled to summary judgment as a matter of law. (Plaintiff's comments regarding unidentified "recent disputes" (Affidavit ¶6) or alleged inaccuracies apparent on the face of his reports (Id. at ¶5 and Opposition, p. 5) are non sequiturs, not related to his failure to disclose or improper review claims made instantly.)

**1. Trans Union Did Not Violate the FCRA In Connection With Its Review of Plaintiff's Report.**

Plaintiff filed this FCRA claim against Trans Union claiming that Trans Union failed to disclose his report to him and that Trans Union and its counsel reviewed his report (Trans Union's records). Plaintiff's assertion that neither Trans Union nor its counsel can lawfully review its records in defense of litigation is absurd. FCRA §1681e(a) requires Trans Union maintain reasonable procedures "designed to . . . limit the furnishing of reports to the" permissible purposes defined in FCRA §1681b. FCRA §1681e(b) requires Trans Union to "follow reasonable procedures to assure maximum possible accuracy." Trans Union reports and files contain a record of the entities to which the consumer's reports were furnished and, of course, the account history regarding the consumer. Trans Union is entitled to review its own records at any time in order to comply with its FCRA obligations.

Similarly, Trans Union is entitled to be represented by counsel to defend FCRA litigation. Necessary to that defense is counsel who is intimately familiar with Trans Union's procedures and records. As more fully explained in Trans Union's opening Memorandum, in order to defend plaintiff's wife's erroneous claims that her report furnished to BCI financial included a bankruptcy record, Trans Union's counsel reviewed Trans Union's records of the reports furnished in connection with that **joint** application – i.e., the reports of plaintiff and his wife. The review of Trans Union's records revealed the BCI's inquiry on **both** files and the fact plaintiff's file contained the bankruptcy record, and his wife's report did not (*See* BCI Deposition, attached to Trans Union's opening brief).

Plaintiff's assertion that Trans Union had no reason to review Plaintiff's report because its counsel knew of plaintiff's bankruptcy filing after a 2002 telephone call is a *non sequitor*. The fact that the bankruptcy was filed was hardly half the story; the content of Trans Union's files respecting plaintiff and his wife was the material issue. Plaintiff's wife erroneously claimed she was denied a loan by BCI because **her** report contained a bankruptcy reference. After a review of the files, which both contained BCI inquiries, it was clear that the denial was not the result of an inaccurate report about plaintiff's wife, but the accurate reporting of plaintiff's own bankruptcy and related derogatory credit history.[2] The review was important to a material issue in that case and to correct (or disclose) an erroneous allegation. Plaintiff's counsel has not presented any case law or statutory language which suggests that Trans Union is prevented from using its own records to thoroughly vet the involvement of its reports used in a transaction which is the subject of litigation. Accordingly, Trans Union is entitled to judgment as a matter of law.

---

[2] Plaintiff's counsel discovered the exact same information via the later subpoena and deposition of BCI; she also chose not to rely upon her knowledge that plaintiff filed for bankruptcy and to see the relevant documents instead.

### 2. Plaintiff's Unsupported Claims Of Unidentified Undisputed Inaccuracies Are Not Germane.

This action was commenced because plaintiff wrongly believed his file was taken "off-line" or otherwise wrongly withheld from him, but reviewed by Trans Union. For the reasons set forth above, the claims fail legally and are without factual support in the record. Apparently recognizing his original claims are defective, plaintiff alleges for the first time in opposition to summary judgment that he has not seen his report, but he somehow knows it was inaccurate; and unidentified disputes were allegedly made well **after** the lawsuit was filed. (Spector Aff., ¶5) His counsel also claims plaintiff's report was never received, but strangely admits to receiving reports as part of Trans Union's initial disclosures in July 2003. (Opposition, p. 5)

Clearly, Plaintiff received a copy of his February 2003 consumer file disclosure. It was mailed to him by Trans Union.[3] *See* Motlasz Declaration ¶7. Even if Plaintiff did not receive this mailing, his counsel obtained a copy with Trans Union's initial disclosures in July 2003. Plaintiff does not, in his affidavit or otherwise, dispute a single entry contained in that report. Significantly, in August 2003, in response to a subpoena, Plaintiff's counsel received a copy of the Trans Union consumer reports furnished to BCI in connection with the joint automobile loan application. Plaintiff does not allege in his complaint, affidavit, or discovery responses, that this report contained any inaccuracy caused him harm for which he is entitled to relief.

Finally, Plaintiff's new "accuracy" claim is contradicted by his own brief. Page 1 of his Opposition states that "***The contents of plaintiff's credit file were not at issue in this matter***…" (emphasis supplied). Any possible claims regarding inaccuracies or alleged disputes are not the subject of this lawsuit or any motion to amend to include such claims.

---

[3] Plaintiff's counsel's attorney argument that the report was "undoubtedly" sent elsewhere is not competent to oppose summary judgment. (Opposition, p. 3)

### 3. Plaintiff's FCRA Claims Fail Because No Harm Resulted from the Alleged Violations.

Trans Union is also entitled to summary judgment because plaintiff has not and cannot establish any harm connected to the delay in disclosure. First, plaintiff has not established that the report, once received, contained any inaccuracies. Thus, the delay did not prevent him from correcting an entry which may have caused him harm if furnished to a potential lender.

Most importantly, Plaintiff's claim of "distress and anger at Trans Union's blatant refusal to comply with the FCRA," is entirely misplaced -- the delay in furnishing the report was **not** intentional and plaintiff failed to present a scintilla of evidence to the contrary. No evidence was presented to contravene the manuals and Motlasz Declaration which establish there was no such refusal. Plaintiff has only submitted his inadmissible affidavit and his attorney's arguments respecting a belief that the delay was intentional. There is no evidence, only rhetoric, conjecture, and attorney argument to support his claims. *See* Riley v. Equifax Credit Info. Servs., 194 F.Supp.2d 1239 (S.D. AL 2002) (granting summary judgment because, *inter alia* conclusory statements relating to procedures not relevant or competent to oppose summary judgment).

Therefore, there is no factual or legal causal connection between the stated basis for his "harm" and the reality of the events. Because plaintiff's emotional distress claims of harm are not connected to Trans Union's actual conduct, the claims fail. The lack of causation between the FCRA violation and the harm alleged recently led to the reversal of a jury verdict in Obabueki v. Choicepoint, Inc., 236 F.Supp.2d 278, 285 (S.D. NY 2002) *aff'd* 319 F.3d 87 (2nd Cir. 2003).

> . . . the FCRA is not a strict liability statute; Choicepoint's violation of the statute does not relieve plaintiff of his burden to establish that those violations were the proximate cause of plaintiff's injury. As the Second Circuit held in Casella v. Equifax Credit Information Services, 56 F.3d 469 (2d Cir. 1995), a court may

6

> properly reject a plaintiff's claims "due to a lack of causation between the harm alleged" and a defendant's "violations of the FCRA." Casella, *supra*, 56 F.3d at 474-75. As discussed above, plaintiff in this action has failed to show that his loss of the employment opportunity at IBM was proximately caused by either Choicepoint's provision of the initial incorrect report or by Choicepoint's failure to obtain proper certification from IBM. Accordingly, Choicepoint's motion for judgment as a matter of law is granted.

The virtually identical result was reached in Cousin v. Trans Union Corp., 246 F.3d 359 (5th Cir. 2001) *cert denied*, 122 S.Ct. 346, 151 L.Ed.2d 261, where the court of appeals reversed and rendered a verdict in favor of plaintiff for emotional distress damages explaining:

> At the time he felt emotional distress, he did not know whether a Trans Union report had been utilized by any of the parties. In light of the fact that the credit denial occurred due to an Equifax report, Cousin's emotional distress from the denial of credit cannot be attributed to Trans Union, and he cannot recover actual damages for that distress. 246 F.3d at 370.

Here, plaintiff's distress likewise "cannot be attributed to Trans Union," because, despite plaintiff's unfounded belief, the delay in receipt of a report was not the result of an intentional act by Trans Union. Because he cannot show the claimed "harm" was "proximately caused" by Trans Union, he cannot recover actual damages for his claimed emotional distress damages. Therefore, as a matter of law, Trans Union is entitled to judgment as a matter of law.

**4.     Plaintiff Cannot and Has Not Presented Evidence Sufficient to Sustain a Claim for Punitive Damages.**

As demonstrated above, plaintiff has failed entirely to meet his burden in connection his FCRA claims. Importantly, he presented no evidence or legal authority in connection with his disclosure claims. (The alleged intentional delay in disclosure or the allegedly improper disclosure to Trans Union or its counsel.)

7

Here, there is no evidence or documents which suggest that Trans Union knowingly or intentionally acted in disregard of Plaintiff's FCRA rights.  Also, plaintiff has connected his distress claim to his mistaken (and debunked) belief that Trans Union intentionally withheld his report.  However, the manuals and Motlasz Declaration confirm that no intentional act occurred.  Thus, none of Trans Union's actions may be reasonably characterized as a "willful misrepresentation or concealment." (*See* discussion of Casella, 56 F.3d at 476 in Trans Union's Memorandum In Support of Summary Judgment)

Moreover, plaintiff's Opposition does not cite a single case which concerns disclosure or permissible purpose determinations.  (See Opposition, pp. 6-7).  Instead, the cases cited by plaintiff discuss the **reporting** of inaccurate account information to third parties, **after** the failure to correct such entries following repeated disputes:  Soghomonian v. U.S. and Trans Union, 278 F.Supp. 2d 1151 (E.D.Ca. 2003)(inaccurate tax lien not corrected after several disputes and plaintiff harmed by reporting of the lien to third parties); Crane v. Trans Union, LLC, 282 F.Supp. 2d 311 (E.D.Pa. 2003)(inaccurate collection account not corrected after disputes and reporting of account connected to credit denials); Lawrence v. Trans Union, LLC, 2003 WL 22992081 (E.D.Pa. 2003)(inaccurate judgment not corrected after disputes and reporting of account connected to alleged credit denial);  Evantash v. . G.E. Capital Mortgage and Trans Union, LLC, 2003 WL  22844198 (E.D.Pa. 2003)(allegedly inaccurate account not corrected after disputes and reporting of account connected to negative credit determinations); Sheffer v. Sears, Experian, Equifax and Trans Union, LLC, 2003 WL 21710573 (E.D.Pa. 2003)(report, which allegedly referred to consumer as "deceased," not corrected after disputes and reporting of account connected to negative credit determinations).  None of the cases contains a relevant discussion of FCRA permissible purpose or disclosure rules.  Moreover, because each case

involved several disputes **and** harm, there is no basis to rely on the cases here, where there was a single disclosure request which was delayed because of a computer glitch.

There is no question that punitive damages can be and are dismissed on summary judgment in the absence of a showing by plaintiffs:  See Casella, *supra*; Hauser v. Equifax, Inc., 602 F.2d 811, 817 (8th Cir. 1979)(a permissible purpose case discussed at length in Trans Union's opening Memorandum); and Dalton v. Capital Associated Industries, Inc., 257 F.3d.409, 418 (4th Cir. 2001), where the Court of Appeals affirmed the dismissal of a punitive damages claim explaining:

> Even though summary judgment is "seldom appropriate" on whether a party possessed a particular state of mind, evidence that [defendant] acted willfully is wholly lacking. . . . Accordingly, no reasonable jury could conclude that CAI acted willfully in violating § § 1681e(b) or 1681k.

Here, plaintiff has not presented *any* evidence to prove Trans Union acted willfully.

Finally, plaintiff's suggestion that Trans Union has moved for summary judgment "without evidentiary support" is simply wrong.  The uncontested Motlasz Declaration and the Trans Union disclosure manuals demonstrate plaintiff's central contention regarding a willful withholding is false. Because the burden was upon plaintiff, **his** failure to present evidence is fatal to his punitive damages action and other FCRA claims.

## III. CONCLUSION

For all the above reasons and authorities, Defendant Trans Union respectfully moves this Court to enter judgment in its favor, and to dismiss Plaintiff's claims with prejudice.

Respectfully Submitted,

_____
BRUCE S. LUCKMAN (ct 10830)
TIMOTHY P. CREECH (*PHV*)ct24399
SATZBERG, TRICHON,
 KOGAN & WERTHEIMER, P.C.
1818 Market St., 30th Floor
Philadelphia, PA 19103
(215) 575-7600; Fax: (215) 575-7688
email:  bluckman@mstkw.com
         tcreech@mstkw.com

*Local Counsel:*
Ira W. Bloom, Esq. (ct 07629)
WAKE, SEE, DIMES & BRYNICZKA
27 Imperial Ave., P.O. Box 777
Westport, CT 06881-0777
(203) 227-9545; Fax: (203) 226-1641
email: ibloom@wsdb.com

*Counsel for Defendant,*
*Trans Union LLC*